```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

ALBERT J. CATALANO, individually and
as Trustee for the Catalano &
Associates, Inc., Defined Benefit
Plan and Trust; DONNA I. CATALANO,
and  L & M GBC, CAT, LLC,

                      Plaintiffs,

vs.                                     Case No.  2:08-cv-667-FtM-29SPC

COHEN & GRIGSBY, P.C.; HENRY C.
COHEN; THAD D. KIRKPATRICK; and
JASON HUNTER KORN,

                      Defendants.
_____

## **OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss Amended Complaint or, Alternatively to Stay the Case and Compel Alternative Dispute Resolution and Memorandum of Law in Support (Doc. #18) filed on November 7, 2008.  Plaintiffs filed a Memorandum in Opposition (Doc. #22) and defendants filed a Reply (Doc. #32).

In their Motion (Doc. #18), defendants request that the Court dismiss the Amended Complaint because plaintiffs fail to state a claim upon which relief may be granted as to Counts I, II, and III. Defendants also request that the Amended Complaint be dismissed because plaintiffs lack standing to assert a claim as to Counts I, II, and III.  In the alternative, defendants request that the Court stay the case and compel the parties to participate in alternative

dispute resolution for any remaining claims in Counts I, II, III, and IV.

As a threshold matter and for the reasons set forth below, the Court finds that the Amended Complaint fails to adequately allege that the amount in controversy exceeds the jurisdictional amount of $75,000, as required for the Court to exercise diversity jurisdiction over the case. Thus, the Court finds that the Amended Complaint should be dismissed for lack of jurisdiction; however, the Court will grant plaintiffs leave to amend their Amended Complaint to remedy any pleading deficiencies if they can do so.

**I.**

On October 24, 2008, plaintiffs Albert J. Catalano ("Catalano"), individually and as Trustee for the Catalano & Associates, Inc. Defined Benefit Plan and Trust (the "Plan"), Donna I. Catalano ("Mrs. Catalano"), and L&M GBC, CAT, LLC (the "CAT LLC") (collectively, the "Catalano Parties"), filed a four-count Amended Complaint (Doc. #17) alleging professional negligence against the law firm of Cohen & Grigsby, P.C. (the "Firm") and three of the Firm's attorneys, Henry C. Cohen ("Cohen"), Thad D. Kirkpatrick ("Kirkpatrick"), and Jason Hunter Korn ("Korn"). In the Amended Complaint, plaintiffs allege as follows:

In late 2004 or early 2005, Catalano, individually and as Trustee for the Plan, and Mrs. Catalano sought to form a limited liability company, the CAT LLC, for the purpose of purchasing investment real estate in Lee County, Florida (the "Real

Property").  Towards that end, Catalano, individually and as Trustee of the Plan, and Mrs. Catalano sought legal representation in connection with all aspects of the transactions necessary to complete the formation of the CAT LLC and for the CAT LLC to purchase the Real Property.  Catalano was referred to the Firm, which accepted and undertook the representation and handled all aspects of the formation of the CAT LLC and the CAT LLC's purchase of the Real Property.  This included among other things: (i) drafting the Operating Agreement for the CAT LLC; (ii) drafting the Management Agreement for the CAT LLC; (iii) representing the Catalano Parties in connection with the purchase of the Real Property, including preparing and reviewing closing documents, reviewing loan documents, and effecting the closing; and (iv) conducting a title search of the Real Property and acting as title agent for procuring title insurance.

As to the formation and structuring of the CAT LLC, Catalano, individually and as Trustee of the Plan, and Mrs. Catalano, sought advice from the Firm and Cohen, an expert in the fields of individual and corporate income taxation, estate planning, and representation before the Internal Revenue Service. Specifically, Catalano asked Cohen "whether it was permissible for Catalano, Mrs. Catalano, and the Plan to all be members of the same Florida limited liability company and to divide the income of the CAT LLC in different ways to different members."  (Doc. #17, ¶¶ 27-29.) Cohen advised the Parties that such a structure and income

distribution were permissible.  Contrary to Cohen's advice and unbeknownst to the Catalano Parties, however, such formation and income distribution constituted a prohibited transaction pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) rules and regulations.

As to the CAT LLC's purchase of the Real Property, Catalano, on behalf of the Catalano Parties, sought advice from the Firm and Kirkpatrick, an expert in the fields of commercial real estate and real estate development.  As the attorney handling the closing for the Real Property, Kirkpatrick reviewed the documents relating to the CAT LLC's structure and the personal guarantees of Catalano and Mrs. Catalano (which were required to obtain financing for the CAT LLC to purchase the Real Property), but did not advise the Catalano Parties of issues pertaining to the resulting ERISA prohibited transactions.

On or about March 14, 2005, the CAT LLC purchased the Real Property from L&M GBC, MAY, LLC (the "MAY LLC") for $1.08 million plus $64,395.82 in closing costs.  To finance the purchase, the CAT LLC paid $373,095.55 in cash obtained from the Plan, financed the balance by borrowing $766,800, and received $4,500.27 in credits for pro-rated taxes and other assessments.  In order to obtain financing, the borrowed portions were required to be personally guaranteed by Catalano, individually, and Mrs. Catalano. Plaintiffs allege that, contrary to Cohen's advice and unbeknownst to them, the structuring of the CAT LLC and the borrowing of money,

secured by Catalano and Mrs. Catalano's personal guarantees, presented a high risk of their engaging in a prohibited transaction pursuant to ERISA rules and regulations.

In October 2006, Catalano learned that the formation of the CAT LLC with the Catalano Parties created a risk of a prohibited transaction pursuant to ERISA rules and regulations, and notified Cohen and Kirkpatrick, another attorney at the Firm. Cohen analyzed the issue and prepared documentation to remove Catalano and Mrs. Catalano from membership in the CAT LLC at no additional charge to them; however, the issue of the risk of an ERISA prohibited transaction, posed by Catalano and Mrs. Catalano's personal guarantees, was not addressed by Cohen or the Firm at that time and remains unaddressed. As a result of the CAT LLC's improper structuring, Catalano and Mrs. Catalano paid $7,235.47 in excise taxes, penalties, and interest.

Subsequent to the CAT LLC's purchase of the Real Property, plaintiffs also discovered that the Real Property was encumbered by a repurchase option from a prior transaction, in which the MAY LLC had purchased the Real Property from Paul D. Ritter, Jr., as Personal Representative of the Estate of James A. Bernet (the "Bernet Estate"). The deed conveying the Real Property from the Bernet Estate to the MAY LLC includes a repurchase option, providing two opportunities for the Bernet Estate to repurchase the Real Property under certain conditions, which encumbers the Real Property and diminishes its value. Kirkpatrick prepared the

warranty deed by which the Real Property was conveyed to the CAT LLC, but failed to reference the repurchase option or to advise the Catalano Parties of its existence.

In October 2006, the Bernet Estate notified the CAT LLC that it intended to exercise its option to repurchase the Real Property. The representation of the CAT LLC in this matter was handled by the Firm and Korn, an expert in civil litigation, despite the Firm's multiple conflicts of interest, which were known to the Firm but unknown to the Catalano Parties at that time. During his representation, Korn failed to diligently represent the CAT LLC because he: (i) failed to analyze the options and remedies available to the CAT LLC; (ii) failed to adequately advise the CAT LLC of the options and remedies available to it regarding the Bernet Estate's claim; (iii) failed to adequately communicate with the Bernet Estate regarding its claim; (iv) failed to adequately communicate with the CAT LLC about the status of the repurchase option dispute; and (v) failed to timely comply with reasonable requests from the CAT LLC for information. (Doc. #17, ¶75.)

Further, plaintiffs allege that the Firm had represented the MAY LLC in connection with its purchase of the Real Property from the Bernet Estate, that the Firm's name and address appear on the recorded deed as to that transaction, and that the Firm had actual knowledge of the repurchase option at the time the Firm represented the Catalano Parties in their purchase of the same Real Property. Plaintiffs also assert that the Firm continued to represent the MAY

LLC up to and after the closing of the CAT LLC's purchase of the Real Property from the MAY LLC, and that the Firm represented a number of other limited liability companies in connection with prior transactions involving the Real Property. The Firm acted both as agent for the title company that provided the title search and agent for the title insurance on the Real Property purchased by the CAT LLC from the MAY LLC. The Firm also had "an ongoing and long standing professional relationship with Steven H. Loveless and Lucy Miller, the individuals who managed the limited liability company that was appointed manager of the CAT LLC." (Doc. #17, ¶59.) Throughout the representation, no actual or potential conflicts of interest were disclosed by Cohen or Kirkpatrick to any of the Catalano Parties.

The Amended Complaint alleges the following claims against the Firm, Cohen, Kirkpatrick, and Korn: (1) Professional Negligence (failure to give correct advice about the risks of ERISA prohibited transactions) against the Firm and Cohen (Count I); (2) Professional Negligence (failure to advise the Catalano parties of the repurchase option encumbering the real property and the ERISA problems prior to closing) against the Firm and Kirkpatrick (Count II); (3) Professional Negligence (due to conflict of interest) against the Firm, Cohen, and Kirkpatrick (Count III); and (4) Professional Negligence (undertaking a compromised and conflicted representation and failing to diligently represent the CAT LLC when

the Bernet Estate asserted the repurchase option) against the Firm and Korn.  Additional facts are set forth below as needed.

**II.**

Federal courts are courts of limited jurisdiction, and the court is required to inquire into its jurisdiction at the earliest possible point in the proceeding. Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)). See also Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1279-80 (11th Cir. 2001).  Jurisdiction may be established where the amount in controversy exceeds $75,000 exclusive of interests and costs and is between citizens of different States.  28 U.S.C. § 1332(a)(1). "When jurisdiction is premised on the diversity of the parties, the court is obligated to assure itself that the case involves the requisite amount in controversy." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000) (citations omitted).

In a diversity case filed directly in federal court, "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). See also Burns v. Windsor Ins. Co., 31 F.3d 1092, 1094 (11th Cir. 1994); Broughton v. Florida Int'l Underwriters, 139 F.3d 861, 863 (11th Cir. 1998).  As the party asserting diversity jurisdiction,

however, plaintiffs have the burden to affirmatively allege facts demonstrating the existence of jurisdiction. E.g., Beavers v. A. O. Smith Elec. Prods. Co., 265 Fed. Appx. 772, 777 (11th Cir. 2008) (internal citation and quotation omitted).

The only basis for federal jurisdiction in the Amended Complaint is diversity jurisdiction, and the only issue as to the existence of diversity jurisdiction is the amount in controversy.[1] After reviewing the file, the Court cannot ascertain that the amount-in-controversy requirement has been satisfied. Plaintiffs state generically in the introductory portion of their Amended Complaint that "[t]he matter in controversy, exclusive of interest and costs, exceeds $75,000.00." (Doc. #17, ¶10.) Other than this generic statement, however, the Court notes that the only quantifiable damages amount specified in the Amended Complaint is

---

[1] The Amended Complaint adequately alleges complete diversity of citizenship between the parties (see Doc. #17, ¶¶ 1-9). Plaintiffs are all deemed citizens of Maryland: Catalano and Mrs. Catalano, as individuals, are citizens of Maryland; the Plan's citizenship is determined by the citizenship of its Trustee (Catalano); and the CAT LLC's citizenship is determined by its member (the Plan). See Xaros v. U.S. Fidelity & Guaranty Co., 820 F.2d 1176, 1181 (11th Cir. 1987) ("The trust funds appear to be voluntary unincorporated associations. As such, they are not citizens of any particular state; rather, the citizenship of its members is determinative of the existence of diversity of citizenship") (citations omitted); Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) ("[L]ike a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen").

Defendant Cohen & Grigsby, P.C. is a citizen of Pennsylvania, and defendants Cohen, Kirkpatrick, and Korn, as individuals, are citizens of Florida.

in the amount of $7,235.47, which was paid by Catalano and Mrs. Catalano for "excise taxes, penalties, and interest as a result of the improper structuring of the CAT LLC pursuant to Cohen's advice." (Doc. #17, ¶34.)

In generic terms, plaintiffs also state the following as to damages in each of their counts:

> As a proximate result of [defendants'] professional negligence, the Catalano Parties have been damaged, including, but not limited to, monetary damages as a result of (i) the improper structuring and formation of the CAT LLC as a prohibited transaction and the risk of a prohibited transaction arising from Catalano and Mrs. Catalano's personal guarantees (including attorneys' and other professional fees), (ii) the formation and maintenance of the CAT LLC for the purpose of acquiring and developing the Real Property, (iii) the purchase of the Real Property (including all out of pocket expenses and ongoing carrying costs, such as insurance, interest, maintenance, taxes, etc.), and (iv) the investment opportunities lost as a result of the CAT LLC purchasing the Real Property.

(See Doc. #17, ¶¶ 38, 54, 67, 78.) Plaintiffs state in the Amended Complaint that the CAT LLC purchased the Real Property by paying $373,099.55 in cash, and borrowing $766,800 (which was financed through personal guarantees by Catalano and Mrs. Catalano). Plaintiffs state that the repurchase option on the Real Property provided "two opportunities for the Bernet Estate to repurchase the Real Property for $878,683.93 if certain development milestones are not met." (Doc. #17, ¶43.) The Amended Complaint, however, fails to mention any information about the outcome of the Bernet Estate's assertion of its repurchase option or to specify any actual damages

sustained by plaintiffs, other than the generic statement reproduced above.

Thus, upon review, the Court finds that the Amended Complaint fails to adequately allege damages or an amount in controversy that exceeds $7,235.47, much less the jurisdictionally required amount of $75,000. Therefore, the Court finds that it lacks diversity jurisdiction over this case and the Amended Complaint will be dismissed, with leave for plaintiffs to cure by filing an amended complaint.

Accordingly, it is now

**ORDERED**:

Defendants' Motion to Dismiss Amended Complaint or, Alternatively to Stay the Case and Compel Alternative Dispute Resolution and Memorandum of Law in Support (Doc. #18) is **GRANTED without prejudice**. Plaintiffs will be granted leave to file a third amended complaint within **TWENTY (20) DAYS** of the date of this Order if they can plead the required amount in controversy.

**DONE AND ORDERED** at Fort Myers, Florida, this ___28th___ day of September, 2009.

/s/ John E. Steele
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record